**In re William Lynn CARLISLE, Debtor.**

**Roberta Ann CARLISLE, Plaintiff,**

**v.**

**William Lynn CARLISLE, Defendant.**

**Bankruptcy No. 95–81423.**
**Adversary No. 96–8017.**

United States Bankruptcy Court,
W.D. Louisiana,
Alexandria Division.

March 4, 1997.

Elvin Fontenot, Leesville, LA, for Debtor/Defendant.

Scott Westerchil, Leesville, LA, for Plaintiff.

## REASONS FOR DECISION

HENLEY A. HUNTER, Chief Judge.

This matter comes before the Court on the Trial on the Merits of a Complaint to Deny Discharge under 11 U.S.C. §§ 523(A) and 727. This is a Core Proceeding pursuant to

28 U.S.C. § 157. This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference from the District Court pursuant to Local District Court Rule 22.01 incorporated into Local Bankruptcy Rule 1.2. No party at interest has sought to withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. Pursuant to these reasons, there will be partial judgment in favor of the plaintiff under § 523.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. FACTS

*"So that, in this unjust divorce of us,
Fortune had left to both of us alike
What to delight in, what to sorrow for.
Her part, poor soul, seeming as burdened
With lesser weight, but not with lesser woe
. . ."*

*William Shakespeare
Comedy of Errors
Act I, Scene 1*

Roberta and William Carlisle were married for twelve and one-half years. They had two children, William Lance and Robert Carlisle. The Carlisles, like so many other American families, are suffering through the agonizing process of divorce. The fact that financial trouble has accompanied a divorce is of little surprise.

At the time of the divorce decree, William Carlisle, the Debtor in this case, was stationed in Kentucky with the U.S. Army. The Carlisles were living off-post, and collected a $600 a month housing allowance in addition to approximately $2,300 a month in income.[1]

Following a physical separation, Roberta Carlisle and her children went to Texas to live with her parents, taking the home furnishings and a 1990 Chevrolet Suburban. The Debtor kept his truck and his bass boat.

---

1. The schedules in the Chapter Seven case reflect different amounts of compensation without the housing allowance. Mr. Carlisle claims he has $2062.00 gross and $1589.86 net.

The Debtor sued Roberta for divorce in the Circuit Court for Christian County, Kentucky. In the course of the divorce proceedings, the parties partitioned their personal property and vehicles in correspondence with the actual possession of the marital property after their physical separation.[2] Other divorce issues, such as support, insurance, and pensions, were also settled, as shown in the Report of the Domestic Relations Commissioner in the divorce case.[3] Alimony, custody of the children, and child support were awarded to Roberta.

The report also provided for the disposition of community debt. Paragraph 6 of the report states that:

"The parties have represented to the court that they plan to file a joint Chapter 13 Bankruptcy Petition. The Petitioner shall pay the filing fee. The Petitioner has agreed to be responsible for the entire contribution to the monthly payout plan if said monthly payout payment is $950.00 or less. If the said monthly payout amount exceeds $950.00 the Petitioner reserves the right to negotiate division of the excess between the parties."[4]

The report was signed by the Commissioner on July 25, 1995.

A Petition for Relief under Chapter 13 of the Bankruptcy Code was filed in the names of the Debtor and Roberta A. Carlisle in the Western District of Kentucky on July 24, 1995. On September 5, 1995, the schedules and the statement of financial affairs were filed in the case.[5] The Summary of Schedules states that the Carlisles had $43,239.00 in secured debt and $4,478.00 in unsecured debt, for a total debt of $47,717.00. Schedule D states that a 1990 Chevrolet Suburban, a 1994 Ford F–150 truck, and a 1993 Vision Bass Boat secured debts to NationsBank in the amounts of $8,840.00, $17,491.00, and $14,691.00 respectively. A debt of $2,217.00 is listed as owed to Peoples Security, secured by household goods.

No plan was filed in the Chapter 13 case. Additionally, the Debtor failed to appear at the original and rescheduled meetings to be held pursuant to 11 U.S.C. § 341(a). Roberta was also unable to attend the meetings, due to an inability to finance a trip from Texas to Paducah, Kentucky. Instead, she filed an affidavit allowing the Debtor to appear on her behalf. Additionally, Roberta's divorce attorney, Robert E. Ison, attended a § 341 meeting on behalf of Mrs. Carlisle, in addition to the Carlisles' bankruptcy attorney.[6] Roberta testified at this trial that the payments for a 100% plan were estimated by the parties divorce lawyers to be $635 a month for 60 months. The Chapter 13 was dismissed in December 1995 for failure to attend the 341 Meeting.

On December 12, 1995, the Debtor filed a Voluntary Petition for Relief under Chapter Seven in this district. Prior to the filing of the instant bankruptcy case, the Debtor's Ford truck was seized by NationsBank. The Debtor's Schedule D lists three secured debts: a NationsBank debt of $16,357.03, secured by the bass boat, a NationsBank debt of $8,791.04, secured by the Suburban, a debt of unknown amount to People's Security Finance, secured by the family furniture. The bass boat was abandoned by the debtor to the bankruptcy estate. The trustee sold the collateral to NationsBank in satisfaction of the secured portion of that debt. Roberta is not listed as a creditor in this bankruptcy case, but is listed only as a co-debtor.

On March 29, 1996, Roberta filed a Complaint to Deny Discharge. The main thrust of this complaint was to deny discharge of the marital debts that were to be paid through a Chapter 13 plan as agreed in the divorce settlement. This matter was tried on Valentine's Day, February 14, 1997.

The Debtor is presently married to Rebecca K. Carlisle. The Debtor, his new wife, and her two teenage boys now live on base at Fort Polk, Louisiana. The Debtor no longer

---

**2.** See Joint Exhibit no. 1.

**3.** Attached to this opinion as Appendix no. 1.

**4.** Appendix I, p. 822.

**5.** The entire record of the Chapter 13 case was filed into the trial record as Plaintiff's Exhibit no. 6.

**6.** See Plaintiff's Exhibit No. 5, Deposition of Robert E. Ison, p. 13.

receives the $600 per month housing allowance, and had no option to live off the post at his new duty station. However, the Debtor does not pay rent, and does not pay for utilities, telephone and cable.

Roberta Carlisle is currently enrolled in college and receives a Pell Grant. The two Carlisle children live with her. Mrs. Carlisle earns approximately $70 per week cleaning houses while attending school full time. She has approximately $200.00 per semester left of her grant, after tuition and books are deducted. Roberta receives a monthly $230.00 subsidy from the Department of Housing and Urban Development towards her rent of $425. According to Roberta, the Debtor has defaulted on his child support obligation of $616.00 per month. She receives $175.00 a month, presumably in AFDC payments, to feed her two children due to the defaulted support obligation. Additionally, the Debtor has not paid the $250 per month alimony to Mrs. Carlisle. The Debtor maintains that his refusal to pay the alimony is justified, based on Roberta's failure to comply with the "making reasonable progress toward obtaining a nursing or vocational degree" condition in the settlement.

## II. APPLICABLE LAW

Plaintiff contends that she is entitled to relief under § 523(a)(15) and 11 U.S.C. § 109. Debtor claims that these provisions are inapplicable.[7]

█ The following are exceptions from discharge under 11 U.S.C. § 523:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt

&ast; &ast; &ast; &ast; &ast; &ast;

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a govern-

mental unit, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

&ast; &ast; &ast; &ast; &ast; &ast;

(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

(A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or

(B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor."

Further, the creation and enforceability of obligations in a divorce settlement are governed by state law. Under normal circumstances, this Court would not state such an obvious proposition. However, the state of the case law requires this point to be justified.

█ Federal Courts are bound to follow 28 U.S.C. § 1652 in determining the creation of obligations in the course of a divorce under § 523(a)(15). The current version of the fa-

---

7. Joint Pre–Trial statement filed August 27, 1996.

mous Rules of Decision Act provides as follows:

"The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."

The laws of the several states include their statutes and jurisprudence. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). In the case at bar, Roberta lives in Texas, the Debtor in Louisiana, and the divorce decree was rendered in Kentucky. To determine which states' law applies to a case, *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), states that a Federal Court should apply the conflicts of law rules of the state in which the court sits. Therefore, we turn to the Louisiana Civil Code, and its articles on conflicts of law.

La.C.C. art. 3522 provides that "unless otherwise provided by the law of this state the effects and incidents of marriage and divorce with regard to an issue are governed by the law applicable to that issue under article 3519." Article 3519 provides for the application of "the law of the state whose policies would be most seriously impaired if its law were not applicable to a particular issue ... That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in light of: (1) the relationship of each state at any pertinent time to the dispute, the parties, and the person whose status is at issue; (2) the policies referred to in article 3515; (3) the policies of sustaining the validity of obligations voluntarily undertaken, of protecting children, minors, and others in need of protection, and of preserving family values and stability."

The Louisiana Court of Appeal for the Fourth Circuit decided a case dealing with conflicts of law and enforcement of divorce settlements. In *Kirby v. Kirby,* 579 So.2d 508 (La.App. 4th Cir.1991), the court applied former Louisiana Civil Code article 15 and decided that Georgia law governed the interpretation of contractual provisions in a divorce settlement perfected in Georgia. The issue before the court was whether Mr. Kirby had the right to seek a reduction of contractual alimony. Georgia law was more favorable to Mr. Kirby than Louisiana law. The court stated that:

"Georgia has an interest in seeing that persons entering into marital settlement agreements in its state have the protection and benefit of its law when it comes to the enforcement of those contractual agreements. On the other hand, plaintiff has obtained a judgment making the Georgia judgment executory in Louisiana, and she has successfully enforced provisions of the contract in a Louisiana court. One party to the contract is domiciled in Louisiana, the other in Arizona ... If Dr. Kirby was aware of the state of the law it would have been a cause for his entering into the contract. The protection of the justified expectations of the parties appear to favor applying Georgia law." *Id* at 513.

When contracts or divorce settlements are created, the provisions of the agreement are shaped by the law which governs the parties. The new conflict articles realize this as well, as Louisiana Civil Code article 3519 requires our consideration of "the policies of sustaining the validity of obligations voluntary undertaken ..."

■ This Court looks to Kentucky law to determine if a § 523(a)(15) obligation exists. Both parties to this litigation were represented by counsel in the divorce proceedings. The agreements in question were memorialized before a Kentucky Domestic Relations Commissioner. Surely, Kentucky law impacted the negotiations leading to the settlement. To apply in any other state's law would give the parties more or less than their respective bargains.

Certain bankruptcy courts have used a different approach. The case of *In re Owens,* 191 B.R. 669 (Bkrtcy.E.D.Ky.1996), holds that the enforceability of divorce settlement obligations to pay marital creditors, under § 523(a)(15), hinges upon whether cer-

tain "hold harmless" language is present in the settlement. The court stated:

> "[T]he absence of the hold harmless language or any other language in this paragraph which would be construed to create a new debt from respondent/defendant to petitioner/plaintiff, leads to the conclusion that this in not a debt 'incurred by the debtor in the course of the separation agreement.' Therefore, the debts described in paragraph (11), to the extent that they remain owing, are not made non-dischargeable by the language of § 523(a)(15)." *Id.* at 674, quoting *In re Stegall,* 188 B.R. 597 (Bkrtcy.W.D.Mo. 1995).

The court, however, provided no basis in Kentucky law to support this conclusion. Additionally, a Tennessee bankruptcy court reached the same result in a similar case with no citation to state law, relying on *Owens. In re LaRue,* 204 B.R. 531 (Bkrtcy. E.D.Tenn.1997). While this Court agrees that "[T]he only relevant obligation of the debtor incurred in connection with the divorce decree was that the plaintiff be held harmless for the ... debt," *Id.* at p. 536, the opinions in *Stegall* and *LaRue* have no justification, either in § 523(a)(15) or state law, that certain "hold harmless" language is required for promises to pay marital debt in order for one spouse to be obligated to the other. As shown below, the Kentucky statutes and jurisprudence do not require talismanic "hold harmless" language for divorce agreements to pay certain debts to be enforceable by a former spouse.

This Court does not take lightly the verbalization of its disagreement with sister courts. However, the *Stegall* and *LaRue* cases are attempts to create federal common law under 11 U.S.C. § 523(a)(15) to determine when an obligation is created in a divorce or property settlement. *Erie and Klaxon* do not give such liberty to the federal bench, whether it is sitting in diversity or in bankruptcy.

### III. APPLICATION OF THE LAW TO THE FACTS

■ The alimony and child support obligations owed Roberta Carlisle are expressly excluded from discharge under 11 U.S.C. § 523(a)(5). The trading of alimentary obligations for property and other benefits is commonplace in divorce settlements. While it is well-settled that bankruptcy courts may inquire behind these labels, this is not the thrust of the plaintiff's complaint. Instead, the plaintiff seeks a declaration that all debts owed to the marital creditors are non-dischargeable. Congress enacted § 523(a)(15) to relieve the bankruptcy system of the chore of discovering the parties' intent in the divorce settlement.

As noted, the parties agreed that a Chapter 13 plan would be filed, and that the debtor would fund the plan and pay the filing fee. The debtor obviously has greater financial means than Roberta. In his deposition, Mr. Ison stated that his understanding of the purpose behind the Chapter 13 was "to get the marital debt payments to a level that Mr. Carlisle could afford to pay them, assume the debt and pay them." The rational for such an effort was clear—to save the marital property from foreclosure. Otherwise, a joint Chapter 7 would have been in order. The debtor's obligation to fund a Chapter 13 plan is clearly an obligation to keep Roberta in possession of the Suburban and the family furniture.

The absence of "hold harmless" language in the settlement agreement does not mean that Ms. Carlisle is left without a remedy under Kentucky law.[8] The two parties, the debtor and Roberta, contracted to the effect that the debtor was to fund a Chapter 13 plan for the benefit of them both. Kentucky Revised Statute 403.180(5) provides that:

> "Terms of the agreement set forth in the decree are enforceable by all remedies available for enforcement of a judgment, including contempt, and are enforceable as contract terms."

Thus, under this statute, Roberta may receive a damage award for the debtor's failure to perform. In *Gray vs. Gray,* 745 S.W.2d 657 (Ky.App.1988), a former husband agreed to make payments on a family automobile so

---

**8.** Contrary to the result in *Owens, supra.*

that his former spouse could remain in possession of that car or a like model. The obligation of the husband was not phrased in terms of holding his wife "harmless" from the car notes. When the husband defaulted on the payments and the car was repossessed, the wife sued for damages. The court applied K.R.S. 403.180(5) and held that:

"Had the appellant performed, the Appellee would have owned a 1981 Datsun. Hence, Marlia Gray is entitled to the fair market value of the car as of the date it was repossessed." *Id.* at 660.

In the circumstances of the Carlisles, had the debtor fulfilled his obligations to their completion, Roberta would own the furniture and the Suburban free of any liens. Also implicit in the Chapter 13 provision in the decree is protection of Roberta from unsecured creditors. As these obligations of the debtor to Roberta were created in the course of a divorce and property settlement, § 523(a)(15) is clearly implicated.

## DISCHARGEABILITY ANALYSIS
## UNDER 11 U.S.C. § 523(a)(15)

■ 11 U.S.C. § 523(a)(15) provides a two part test to determine if divorce obligations are nondischargeable. The first prong examines whether the debtor has the ability to pay the obligations from disposable income. The second prong balances the equities between the parties to determine if the benefit of the debtor's discharge outweighs the determent to the non-debtor spouse. In this case, the agreement by the debtor to fund a Chapter 13 plan created a series of obligations in favor of Roberta. This Court adopts the rationale of the case of *In re Greenwalt,* 200 B.R. 909, 914 (Bkrtcy. W.D.Wash.1996), which holds that where "the liability to the former spouse is comprised of various underlying obligations.... there is nothing to prevent the court from analyzing them separately." The fact that § 523(a)(15) speaks in terms of discharging "such debt" buttresses the *Greenwalt* holding.

■ When different divorce obligations are present in a § 523(a)(15) case, prudence requires that the second prong of the test be analyzed first. If the equities of the discharge of each debt are analyzed first, a smaller amount of debt may be used to analyze the debtor's ability to pay. This approach best effectuates the purposes of the statute and the Bankruptcy Code as a whole. The Debtor receives a discharge that is as broad as possible, while leaving the obligations most necessary to the spouse's survival in tact. If the Court were to do otherwise, § 523(a)(15) cases would become all or nothing determinations, contrary to the "such debt" language in the statute.

## ANALYSIS UNDER § 523(a)(15)(B)

■ In balancing the benefit of the discharge to the debtor against the detriment to the creditor/spouse, a number of factors should be considered. The case of *In re Smither,* 194 B.R. 102, 111 (Bkrtcy.W.D.Ky. 1996) provides a workable, non-exclusive list:

"1.	The amount of debt involved, including all payment terms;

2.	The current income of the debtors, objecting creditor and their respective spouses;

3.	The current expenses of the debtor, objecting creditor and their respective spouses;

4.	The current assets, including exempt assets of the debtor, objecting creditor and their respective spouses;

5.	The current liabilities, excluding those discharged by the debtor's bankruptcy, of the debtor, objecting creditor, and their respective spouses;

6.	The health, job skills, training, age and education of the debtor, objecting creditor and their respective spouses;

7.	The dependents of the debtor, objecting creditor and their respective spouses, their ages and any special needs they may have;

8.	Any changes in the financial conditions of the debtor and the objecting creditor which may have occurred since the entry of the divorce decree;

9.	The amount of debt which has been or will be discharged in the debtor's bankruptcy; whether the objecting

creditor is eligible for relief under the bankruptcy code; and

10. Whether the parties have acted in good faith in the filing of the bankruptcy and the ligation of 11 U.S.C. § 523(a)(15) issues."

■ The interplay between divorce and financial hardship is easy to comprehend. In these circumstances, Roberta Carlisle's eligibility for bankruptcy relief is an important consideration. As to the unsecured debt, this Court finds in favor of the debtor. Roberta herself seems to be eligible for relief under the Code. The detriment to Roberta in discharging the debtor's obligation to procure a discharge for these debts in the Chapter 13 is very slight, in that Roberta can get the discharge she needs in a Chapter 7. From the examination of the schedules, these debts are typical consumer credit transactions and medical bills. These debts are fully dischargeable in a Chapter 7, as is any deficiency claim relating to Debtor's truck and boat.

■ The same conclusions, however, do not follow in considering the Suburban and the home furnishings. Roberta Carlisle is a student with two children. She receives government financial assistance for school, food and shelter. Roberta and her children need this car and furniture. It is unlikely that Roberta can pay for or replace these items. Additionally, as discussed below, the debtor has the ability to pay for these things to fulfill his divorce obligations. Bankruptcy does not condone the retention of property without paying for it. Thus, we find that the amounts necessary to redeem the property under 11 U.S.C. 722 are non-dischargeable. Roberta testified in court, however, that she made arrangements to re-finance the Suburban debt, with the help of family. The details of that arrangement were not revealed to the court. Therefore, this Court will only award Ms. Carlisle the fair market or redemption value of the Suburban and the furniture. This result is consistent with the *Gray* case, *supra,* which awarded the plaintiff fair market value for the property she lost when her husband defaulted on his obligations. *Gray,* at p. 660.

According to the Chapter 7 schedules, which are more recent than those filed in the Chapter 13, the value of the Suburban is $8000. In the Chapter 7 proofs of claim, the lien holder on the furniture claims a fully secured debt of $2510.13. The Chapter 13 schedules give the furniture a value of $2217.00. The Chapter 7 schedules do not assign a value to the furniture. As both debtors signed the required declaration with their Chapter 13 schedules, this Court believes that $2217.00 properly reimburses Ms. Carlisle for the Debtor's obligation in relation to the furniture.

### ANALYSIS UNDER § 523(a)(15)(A)

■ Under § 523(a)(15)(A), the court must determine the debtor's ability to pay the divorce obligations in question over a reasonable period of time. By the terms of the statute, the debtor's expenses for maintenance and support of himself and any dependents must be considered. The obligations relating to the Suburban and the family furniture total $10,510.13. The debtor's schedules in this case reflect a total monthly income of $1599.86. Additionally, the debtor testified that his new wife has an income of approximately $1000.00. The debtor's schedule J indicates that the debtor has living expenses of $1480.00, including the child support and alimony that he is not presently paying. This figure excludes the listed expenses of boat insurance, the truck note, the boat note, and the debt to People's Security. This leaves the debtor approximately $119.00 as disposable income per month. Currently, the United States Army deducts from the debtor's pay $149.50 for the repayment of a past salary advance. After this advance is paid off, the debtor has $269.36 in disposable income every month and could pay $9696.96 over three years. These calculations do not include the debtor's present wife's income of $1000.00 a month. From the testimony at trial, this Court has determined that the debtor and his new wife are living in a community of acquets and gains under Louisiana law. Under Louisiana Civil Code article 2345, "a separate or community obligation may be satisfied during the community property regime from community property and from the separate property of the spouse

who incurred the obligation." Considering the debtor's total community income of $2,599.86 per month, this Court reaches the inescapable conclusion that the debtor can pay his obligations to Roberta for the debts secured by the Suburban and the family furniture within a reasonable time.

The current jurisprudence on the burden of proof in cases under § 523(a)(15)(A) is mixed. *See In re Woodworth,* 187 B.R. 174 (Bkrtcy.N.D.Ohio 1995), *In re Butler,* 186 B.R. 371 (Bkrtcy.D.Vermont 1995), and *In re Hesson,* 190 B.R. 229 (Bkrtcy.D.Md.1995). This case does not require the court to choose a burden of proof approach. The Debtor listed in his schedules, and testified to, his military income. Additionally, the examination of the debtor by the plaintiff in court revealed an extra $1000.00 in income. Whether the debtor or the plaintiff has the burden of proof in this matter is of no moment. The evidence clearly preponderates in favor of the plaintiff on the debtor's ability to pay.

Having reached these conclusions under § 523(a)(15), only brief mention of plaintiff's additional claims is needed. Plaintiff's contentions under § 109 are unclear. The dismissal of the Chapter 13 case did not include a finding under that section. Therefore, nothing precluded Debtor from refiling under Chapter 7, nor similarly would he have been barred from filing another Chapter 13. He is, however, precluded under § 523(a)(15) from discharging certain obligations to his ex-spouse, in addition to the alimony and child support which are non-dischargeable under (a)(5). Having reached these conclusions under § 523, this opinion does not reach plaintiff's contentions under § 727.

## CONCLUSION

Pursuant to these reasons, the court determines that the debtor's obligation to pay for the family furniture and Roberta's Suburban through a Chapter 13 plan, in the total amount of $10,510.13, is non-dischargeable. A separate conforming judgment will be entered.

## APPENDIX I.

COMMONWEALTH OF KENTUCKY
CHRISTIAN CIRCUIT COURT
CIVIL ACTION NO. 95–CI–00128
DIVISION NO. II

WILLIAM LYNN CARLISLE,
PETITIONER,

VS.

ROBERTA ANN CARLISLE,
RESPONDENT.

### *REPORT OF DOMESTIC RELATIONS COMMISSIONER*

This matter was before the Court on July 14, 1995, for Final Evidentiary Hearing. The Petitioner, William Lynn Carlisle, was present and represented by Hon. J. Michael Foster. The Respondent, Roberta Ann Carlisle, was present and represented by Hon. Robert E. Ison.

The parties advised the Court that they had reached an agreement with regard to settlement of the issues presented herein and that they wished to recite said agreement terms to the Commissioner to be incorporated into the record and Final Decree of Dissolution of Marriage. The Commissioner finds the following terms of settlement agreed upon by the parties to be fair, equitable and not unconscionable:

1. There are two children born of this marriage, William Lance Carlisle, age 10, and Robert Travis Carlisle, age 6. The Petitioner and Respondent shall have joint custody of said children with the Respondent exercising primary physical custody. The Petitioner shall have the following visitation rights: one (1) weekend each calendar month with two weeks notice to the Respondent; five (5) weeks each summer to be divided into three (3) weeks at the beginning of the summer and two (2) weeks at the end of the summer and with 45 days notice to the Respondent; Alternating holiday and spring break visits consistent with that provided in the Christian Circuit Court Guidelines.

2. The Petitioner shall pay child support in the amount of $616.00 per month by military allotment.

3. The children are eligible for medical care benefits as U.S. Army dependents. Each party shall take all reasonably necessary steps to effectuate said benefits. The Petitioner shall maintain a dental plan on behalf of the children while he is in the military.

Medical expenses not reimbursed by insurance or other third party provider shall be shared by the parties as follows: During the first year, the Petitioner shall pay 80% and the Respondent shall pay 20%. Every year thereafter the parties shall share equally in the payment of non-reimbursed medical expenses.

4. The right to claim the children as dependents for income tax purposes is allocated as follows: The Petitioner shall be entitled to claim the two children in 1995, 1996, and 1997. Beginning in 1998 and continuing thereafter during the children's age of minority, the Petitioner shall be entitled to claim as dependent Robert Travis Carlisle and the Respondent shall be entitled to claim as dependent William Lance Carlisle for tax purposes.

5. The Petitioner shall pay maintenance to the Respondent in the amount of $250.00 per month for three years providing that the Respondent is enrolled and making reasonable progress toward obtaining a nursing or vocational degree. Said maintenance shall commence August 1, 1995.

6. Each party shall take and own that personal property presently in their respective possessions with the following exceptions:

a. Invention patent pending. The Invention patent pending shall be retained by the Petitioner. In the event the invention or patent produces income, the Petitioner shall be entitled to one half of the income and the children shall receive one half of the income, in trust if they have not yet reached the age of majority, with the Petitioner to serve as trustee.

b. Military Retirement. The parties agree that 60% of the U.S. Army retirement benefits held by the Petitioner are marital property, and that the Respondent is entitled to one half of the marital property. Counsel of the Respondent shall prepare an appropriate order reflecting that the Respondent is entitled to 30% of said retirement benefits.

d. Insurance policies. The Respondent shall take and own any and all insurance policies held in her name and upon her life.

e. The Petitioner shall take and own the 1994 tax refund check in the amount of $805.00.

6. The parties have represented to the Court that they plan to file a joint Chapter 13 bankruptcy petition. The Petitioner shall pay the filing fee. The Petitioner has agreed to be responsible for the entire contribution to the monthly payout plan if said monthly payment is $950.00 or less. If said monthly payout amount exceeds $950.00 the Petitioner reserves to right to negotiate division of the excess between the parties.

7. Each party shall pay their own respective attorney's fee in this action and the parties shall share equally in the payment of court costs.

Statutory jurisdictional proof was satisfied through the testimony of the Petitioner. Testimony was offered by both parties that they were in agreement with the above terms of settlement. The Commissioner finds that the agreement between the parties as contained herein is not unconscionable and may be incorporated into a Final Decree of Dissolution of Marriage.

The Commissioner assesses a fee in the amount of $80.00 which represents two hours of time and shall be shared equally by the parties.

This 25 day of July, 1995.

/s/ Judy Hall Kemp
JUDY HALL KEMP,
DOMESTIC RELATIONS COMMISSIONER

### CERTIFICATE OF SERVICE

The undersigned Commissioner hereby certifies that the foregoing Report was served on the parties by mailing a true and exact copy of same to Hon. Robert E. Ison, P.O. Box 675, Hopkinsville, KY 42241–0675, and Hon. J. Michael Foster, P.O. Box 24,

Hopkinsville, KY 42241–0024, this 25 day of July, 1995.

/s/ Judy Hall Kemp

JUDY HALL KEMP, DOMESTIC RELATIONS COMMISSIONER