**In re Clarence and Yvonne HAINES, Debtors.**

**Judy A. FITZSIMONDS, Plaintiff,**

v.

**Clarence HAINES, Defendant.**

**Bankruptcy No. 95–04222–A7.**

**Adversary No. 95–90332–A7.**

United States Bankruptcy Court,
S.D. California.

June 30, 1997.

Richard R. Ravreby, Ravreby, Shaner & Gibson, Carlsbad, CA, for Plaintiff.

Irene Cockcroft, San Diego, CA, for Defendant.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Chief Judge.

Judy A. Fitzsimonds ("Fitzsimonds"), former spouse of Clarence A. Haines ("Haines") has sued Haines to have certain debts arising out of their previous marriage declared nondischargeable. This action is brought both under section 523(a)(15) and section 523(a)(5).

## I. FACTUAL SUMMARY

### A. *Family Court Proceedings:*

The marriage of Fitzsimonds and Haines was dissolved on March 21, 1989. Real property located at 7613 Teebird Lane, San Diego, California was the subject of litigation in their divorce proceedings. After a trial, by judgment entered November 1, 1990 the family court determined that Fitzsimonds' community property interest in the residence was limited as Haines had owned the property prior to his marriage to Fitzsimonds. Although the parties had married in 1981, Haines had held sole title until he conveyed the residence to himself and Fitzsimonds as joint tenants in 1983.

In 1987 when the marriage began deteriorating, Haines had Fitzsimonds sign a quit claim deed re-conveying the property to him as his sole and separate property. For various reasons not material here, the family court believed that Fitzsimonds failed to prove she had been coerced into signing the quit claim deed, found the community property interest in the residence to be $36,000.00 and awarded her one-half. Fitzsimonds appealed this judgment and succeeded in obtaining its reversal by decision entered March 21, 1995. The family court was ordered to "amend the judgment" essentially to disregard the 1987 quit claim deed and recalculate Fitzsimonds' community property interest as though the parties had separated in 1990.

Haines together with his new spouse Yvonne Haines filed a Chapter 7 bankruptcy on April 27, 1995. In November 1995 this court granted Fitzsimonds relief from the automatic stay to return to family court for further proceedings pursuant to the remand of the case from the court of appeal. In August 1996, the family court determined that Haines owed Fitzsimonds $42,303.76 as and for her community property interest in the Teebird Lane property. Additionally, the court awarded her $26,983.59 in interest through July 31, 1996. The court also directed Haines to pay Fitzsimonds' various attorney fees totalling $34,000.00. However, the family court judge declined to award the payment of her attorney's fees as and for additional support as Fitzsimonds had previously waived all claims for spousal support (this order is the subject of yet another appeal by Fitzsimonds).

### B. *Bankruptcy Court Proceeding:*

This court held a trial on the non-dischargeability complaint on November 18 and November 19, 1996. Based on evidence introduced at trial, the court makes the following findings of fact:

1. The pre-trial order signed by both counsel and entered by the court on November 4, 1996 is incorporated by reference as additional findings by the court.

2. Clarence A. Haines is a 54-year old school bus driver for San Diego City Schools. He works eleven months/year netting $2,129.91/month (Exhibit "O"). He is not

paid for the month of August. If there is extra driving work available, as a senior employee he should be offered the opportunity to work first. Assuming no work is available or he chooses not to take it, on an annualized basis, his net pay is $1,952.41/month.

Yvonne Haines is employed by the San Marcos Unified School District as a teacher. It appears she nets $3,267.00/month (Exhibit "P"). There is no evidence to the contrary so the court finds that the net income is received each month of the year and not merely during the school year. That conclusion appears to be supported by Exhibit "N".

Therefore the total monthly net income for Mr. and Mrs. Haines is $5,220.00 (Exhibit "N").

3. Mr. and Mrs. Haines have three children residing with them. They are Mr. Haines' daughter Michelle, age 21, a full-time student; Mrs. Haines' son Andre, age 18, a student; and, Mr. and Mrs. Haines' child Corey, 17 months.

4. Exhibit "C" is an income and expense declaration filed on June 28, 1996 in conjunction with the family court proceedings after remand and reflects total monthly expenses for the Haines family of $5,559.00. Mr. Haines' testimony on both direct and cross-examination is that there have been changes in those expenses as of the time of this trial five months later.

5. Exhibit "N" is a list prepared by the debtors of their current expenses. It reflects an additional $1,174.00 in expenses over those listed on Exhibit "C".

6. There are a number of new expenses shown on Exhibit "N" not previously listed on Exhibit "C". They are:

a. Baby expenses—$150.00.

b. Monthly membership—$30.00.

C. Home supplies (cleaning, etc.)—$30.00.

d. Continuing education for Mrs. Haines—$50.00.

e. Baby toys

f. Home furniture repair and replacement—$30.00.

q. Gifts—$100.00.

h. Computer used by Mrs. Haines—$100.00.

i. Tax preparation—$11.00.

j. Attorney's fees—$600.00.

7. Haines testified that the largest increase in the expenses is due to $8,000.00 in attorneys' fees he incurred after filing his Chapter 7 petition in connection with the family court case on remand, the renewed appeal by Ms. Fitzsimonds and the defense of this complaint for non-dischargeability. He is attempting to repay these attorneys' fees and remain current with his appellate counsel by paying $600.00/month toward these debts.

Another major source of increase in the expenses over those listed on Exhibit "C" is the expenses Mrs. Haines incurs in pursuing her profession. Continuing education and paying for a computer she uses in writing textbooks add $150.00 to the monthly expenses. These expenses were not listed on Exhibit "C".

Finally, Haines testified that he misunderstood Exhibit "C" when he prepared it. He listed only ½ the monthly cost of the maintenance of the house rather than the full $500.00 which he believes is more realistic. His testimony about the deteriorated condition of the house was extensive and uncontroverted.

8. Judy Fitzsimonds is now re-married to Jim Fitzsimonds. Prior to moving from California, she was employed in the day care field. She now lives in Napton, Missouri where she is seeking new employment as either a waitress or a fitness instructor. Although she was not employed at the time of trial, she believes that she will be able to earn $1,000.00/month from this employment. Ms. Fitzsimonds testified that Jim Fitzsimonds is employed as a truck driver netting $1,500.00/month.

9. Mr. and Mrs. Fitzsimonds have no dependents residing with them.

10. Ms. Fitzsimonds testified that the couple's monthly expenses average $1,600.00/month. They pay no rent because they live in a house owned by Mr. Fitzsimonds' brother. Ms. Fitzsimonds says she and her husband owe $20,700.00 in credit card debt.

11. In addition to the credit card debt, Ms. Fitzsimonds owes attorneys' fees to various attorneys in connection with her divorce proceeding. She testified she owes $7,000.00 to Attorney James P. Clark ("Clark") for representation in the trial of the divorce,[1] $7,000.00 to Attorney Richard Raverby for representation in this bankruptcy litigation and $32,000.00 to Attorney Sharron Voorhees ("Voorhees"), her appellate counsel.[2]

Fitzsimonds testified that Voorhees has told her she will not have to pay Voorhees her attorney's fees if they are discharged in Haines' bankruptcy case. Voorhees is a former neighbor and friend of Ms. Fitzsimonds.

12. Under the terms of the judgment of dissolution entered October 30, 1990 (Exhibit "2"), Ms. Fitzsimonds has a one-half community property interest in Mr. Haines' retirement benefits according to a ratio derived by relating the number of days of Haines' employment under the retirement system to the number of days employed under said system while married to Fitzsimonds. The parties had an eight-year marriage (1981–89) and Mr. Haines has been employed by the school district since 1972. Ms. Fitzsimonds has no other retirement benefits.

## II. ISSUES

A. Is any portion of the award to Fitzsimonds non-dischargeable as support under 11 U.S.C. § 523(a)(5)?

B. Does Haines have the ability to pay the debt from income or property not reasonably necessary for the maintenance or support of himself and his dependents [11 U.S.C. § 523(a)(15)(A) ]?

C. If Haines has the ability to pay some but not all of the divorce debt, should the court "partially discharge" a portion of the debt?

D. Does the benefit to Haines in having this debt discharged outweigh the detriment to Fitzsimonds in not receiving the amounts awarded by the family court [11 U.S.C. § 523(a)(15)(B) ]?

## III. DISCUSSION

■ **A. *Award As Support:*** No portion of the payments ordered to be made by Haines to Fitzsimonds is support as defined by 11 U.S.C. § 523(a)(5). Paragraph 2 on attachment 4F to the Judgment of Dissolution entered October 30, 1990 states:

> Wife waives any and all rights to spousal support payments from Husband and understands that such waiver is *final* and she may never in the future petition any Court for such support. (Stipulation) (emphasis added).

Exhibit "H". Having waived the right to support in a long-since final judgment, she cannot obtain better rights in this court than she did in family court. There is no portion of the award which is non-dischargeable as support under 11 U.S.C. § 523(a)(5).

■ **B. *Ability to Pay:*** Haines is obligated to pay Fitzsimonds' debts totalling $103,287.35. The sum owed bears interest of $11.59/day on the unpaid equalizing payment for Fitzsimonds' community property interest in the residence. The debt is one incurred by the debtor in the course of a divorce and pursuant to a divorce decree. This finding shifts the burden to Haines to first prove his inability to pay the debt. *In re Morris,* 193 B.R. 949, 952 (Bankr.S.D.Cal. 1996); *In re Hill,* 184 B.R. 750, 754 (Bankr. N.D.Ill.1995).

■ Haines' net income is approximately $23,429.00/year. He has re-married since his divorce from Fitzsimonds. This court agrees with the majority of cases considering this fact in weighing the ability to pay under Section 523(a)(15) and determines that where a debtor has remarried, his or her spouse's net income should be included in the calculation of "disposable income". *In re Smither,* 194 B.R. 102, 108 (Bankr.W.D.Ky.1996); *In*

---

1. It is unclear whether the amount owed Clark arises only out of the first trial or includes amounts incurred during the rehearing after appeal. Exhibit "5" at 4:3–4 states that Mr. Haines is obligated to pay Clark $4,000.00 in fees.

2. It is unclear as well whether the fees owed Voorhees are merely those arising out of the first appeal or include fees arising out of the second appeal. Exhibit "7" at 4:8–9 directs Haines to pay $30,000.00 for fees and costs arising out of the first appeal.

*re Comisky,* 183 B.R. 883, 884 (Bankr. N.D.Cal.1995). By including Mrs. Haines' net income, the court concludes that the family's total net monthly income is $5,220.00/month. With net income of this amount, Haines claims he and Mrs. Haines must pay monthly expenses totalling $6,733.00 (Exhibit "N").

■ Before evaluating Haines' ability to pay, the court will address Fitzsimonds' contention that this court is collaterally estopped from determining this issue because the family court determined Haines had ability to pay. The court rejects this contention for two reasons. First, it appears that the determination by the family court (no doubt undertaken at the behest of plaintiff's counsel) of Haines' ability to pay was outside the scope of the limited stay relief afforded plaintiff. Haines filed his bankruptcy case after the court of appeal reversed the original family court judgment but before the family court could fix the proper amount of the community property interest or determine whether awarding attorney's fees and costs incurred in the appeal as "additional spousal support" was appropriate.

In plaintiff's complaint to determine these debts non-dischargeable, plaintiff stated:

> Plaintiff has filed a motion for relief from the Automatic Stay in this bankruptcy matter requesting the United States Bankruptcy Court to grant partial relief from the automatic stay to allow the Superior Court *to determine the issues surrounding the division of the parties' community property . . . and* to allow the Superior Court to *determine the payment of attorney's fees as additional spousal support.* The actual amount of the debt owed by Defendant to Plaintiff will be set by the San Diego Superior Court in the event Plaintiff is granted relief from the Automatic Stay, and will be amended as part of the complaint herein when established.

Complaint filed 06/01/95 at 3:22–27, 4:1–5. (Emphasis added.)

When plaintiff's counsel filed the motion for stay relief, his brief in support argued:

> The parties will be required to return to the Bankruptcy Court to litigate the issue

of ability to pay and relative burdens of the parties.

Memorandum of Points and Authorities in Support, *etc.,* filed 09/27/95 at 8:4–7. This court granted limited stay relief ordering:

> The San Diego Superior Court is authorized to make a determination regarding all issues remaining between the parties, as referenced by the decision rendered on March 21, 1995 by the Court of Appeal, Fourth Appellate District, Division One. These issues include debits/credits as to the parties' former community residence and the issue of attorney's fees and costs.

Order entered 10/30/95 at 2:10–15.

The determination by the family court of Haines' ability to pay the amounts it awarded Fitzsimonds was not within the limited scope of the stay relief nor was it necessary to the family court's determination of the other issues. Actions taken in violation of the automatic stay are void. *In re Schwartz,* 954 F.2d 569, 571 (9th Cir.1992).

■ Second, the decision of section 523(a)(15) issues is within the exclusive jurisdiction of this court. Fed. R. Bankr.P. 4007, Advisory Committee Note (1993); *see also* 4 Lawrence B. King, *Collier on Bankruptcy,* ¶ 523.04 at 523–17 (15th ed. 1997) Unlike section 523(a)(5) matters, concurrent jurisdiction does not lie with state court.

■■ In determining ability to pay, the court looks at the debtor's income and expenses at the time of trial. *In re Morris* at 952. However, in analyzing ability to pay, the court is not required to accept blindly a debtor's protestations that there is no net disposable income from which to pay the obligation to the former spouse creditor. The ability to pay test requires the court to examine whether the debtor's budgeted expenses are reasonably necessary. *In re Hill,* 184 B.R. 750, 755 (Bankr.N.D.Ill.1995).

Haines admitted on cross-examination that many of the budgeted items resulting in a $1,500.00/month shortfall in income over expenses are discretionary in nature. For example, although Haines has budgeted $500.00/month for home maintenance, he admitted that he does not actually spend that. Other discretionary monthly expenses in-

clude a reserve for vacation ($100.00) and gifts ($100.00). In addition, the court is skeptical about the necessity of certain other expenses which appeared for the first time on Exhibit "N". They include items such as baby expenses and toys ($170.00), home cleaning supplies ($30.00), and home furniture repair and replacement ($30.00). In the court's view, many of Haines' other expenses appear inflated.[3]

Finally, there is the issue of post-Chapter 7 attorneys' fees totalling $8,000.00 at the time of trial. Haines budgets payment of these and future attorneys' fees on appeal at $600.00/month.

To characterize the divorce of Haines and Fitzsimonds as bitter is an understatement. Haines has spent almost $80,000.00 in attorneys' fees, refinancing his modestly valued house twice[4] in his battle with Fitzsimonds over whether he did or did not coerce her into signing a quit claim deed to the residence in 1987. The following exchange during Haines' cross-examination illustrates this:

Q: Mr. Haines you have budgeted money out of your income to pay attorneys to defend your position to not pay any additional money to Miss Fitzsimonds, correct?

A: I have refinanced my house twice. I have taken money where it should go to my family, to my wife to my children, to my life and redistributed it and put into legal fees, that's correct, Sir.

Q: That's because you don't want to pay any money to Miss Fitzsimonds, correct?

A: That's because I have been wronged and I have been lied about and misrepresented in the courtroom.

Q: But the judgment has been against you, correct, there has been an order issued?

A: The original trial I prevailed. The appellate court was misled. The procedure was abused. The appellate attorney told lies about me. She mischaracterized me and my behavior and I'll be resentful till the day I die.

\* \* \* \* \* \*

Q: You could have spent half the money in attorneys' fees and paid off Miss Fitzsimonds could you not have?

A: This is a matter of principle. I was wronged. I have been lied about. I will fight this principle (*sic*) regardless ever of the financial obligation to me, I'll keep continuing this fight. Someone will listen to me at some point in time.

R.T. dated 11/18/96 at 90:23–25, 91:1–16; 100:6–13.

█ This court is aware of no case which holds that reasonably necessary expenses include payment of legal fees to defend a principle at the expense of the debtor's other financial obligations, no matter how odious. Based on the foregoing, the court concludes the debtor has overstated his expenses by at least $1,530.00 and has at least $200.00/month disposable income when one adjusts the inflated expenses. That amount may be greater in the near future when Haines' daughter Michelle (age 21) completes school and begins working.

█ C. *Partial Dischargeability Of Divorce Debt:* Having determined that Haines has some disposable income not reasonably necessary for the maintenance or support of himself and his dependents, some courts would ask whether he has the ability to pay the whole debt. Admittedly, the debt is large. Under the August 1996 family court order, Haines was directed to pay amounts totalling $103,287.35. Even under the unusual terms of the August 1996 family court order,[5] the debtor would be required to pay

---

3. For example, Exhibit "N" lists monthly expenses of $35.00 for hair supplies, $50.00 for laundry and dry cleaning, $125.00 for recreation, dining out, clubs and memberships, $100.00 for telephone and $250.00 for clothing.

4. Debtors' schedules value the house at $185,000.

5. The Amended Findings and Orders entered November 4, 1996 (Exhibit "R") state, "However, for every $1.00 paid toward the principal amount of the $69,287.35 to Petitioner [Fitzsimonds], the attorney's fees to Sharron Voorhees shall be reduced by $.60. As an example, should Respondent [Haines] pay to Petitioner $30,000.00 towards the obligations in paragraph 1,

$50,000.00 of the principal amount owing to Fitzsimonds before being relieved of the attorney's fee obligation to Voorhees. It would take him 20 years to do that at the rate of $200.00/month.

When faced with an apparent inability to pay all of the non-dischargeable debt over a "reasonable" period of time, some courts have resorted to "partially, discharging" some of the obligation. *In re Comisky*, 183 B.R. 883, 884 (Bankr.N.D.Cal.1995); *In re Smither*, 194 B.R. 102, 109–110 (Bankr. W.D.Ky.1996); *In re McGinnis*, 194 B.R. 917 (Bankr.N.D.Ala.1996); *In re Greenwalt*, 200 B.R. 909, 914 (Bankr.W.D.Wash.1996); *In re Carlisle*, 205 B.R. 812 (Bankr.W.D.La.1997) These courts have concluded for a variety of reasons that they have the ability to partially discharge portions of the divorce debt. The *Comisky, Smither, Greenwalt and McGinnis* courts appear to rely on the similarity of the language in 11 U.S.C. § 523(a)(8) to that of section 523(a)(15) and those section 523(a)(8) cases holding that student loans may be partially discharged where a debtor would suffer undue hardship if forced to pay all of the loan. *See, In re Comisky* at 884; *In re Smither* at 109–110; *In re Greenwalt* at 914; *In re McGinnis* at 921.

At least one court has read into section 523(a)(15)(A) the requirement that the court determine the debtor's ability to pay the divorce debt over a "reasonable" period of time. *See, In re Carlisle* at 821. Further, *Carlisle*, following *Greenwalt*, places great significance on the language "such debt" in section 523(a)(15)(A) to buttress an approach which analyzes each portion of the divorce debt separately to determine its dischargeability. *In re Greenwalt* at 914; *In re Carlisle* at 819.

All of the above-cited cases are unanimous in their condemnation that the so-called "all

the attorney's fees will be reduced by $18,-000.00." At 4:13–17.

6. *Comisky* found the debtor could pay between $200–$300/month which over a period of 33–50 months would equal $10,000. The balance of the $25,000 marital settlement debt was discharged. *McGinnis* found the debtor had $300/month disposable income and found $10,800 ($300 × 36 = $10,800) of the $18,906 owed as

or nothing" approach is "harsh", "not mandated", and "clearly contrary to dictates of reasonable statutory interpretations". This court disagrees. In the *Morris* decision, this court rejected applying the standards in the student loan cases under section 523(a)(8) to the determination of non-dischargeability of divorce debts. This court believes that the standard for determining ability to pay is the disposable income standard used in section 1325(b)(2) for considering objections to Chapter 13 plans. The language of that section is not merely similar to section 523(a)(15)(A) but identical. The court found that application of the student loan test merely confused the analysis required. *In re Morris* at 953.

When one analyzes what was actually done by the courts which have partially discharged divorce debt, it is clear that they are multiplying disposable income by a time period of 36 to 60 months (the permissible length of a Chapter 13 plan) and determining any amounts in excess of that to be discharged.[6] The *Smither* court warned of the danger in doing this and then ignored its warning in the decision:

> Unlike Chapter 13 cases where, if a debtor's finances improve or deteriorate, plan payments can be adjusted over the term of the plan, the court has no ability to revisit a debtor's financial circumstances after the conclusion of the trial on the 11 U.S.C. § 523(a)(15) issues.

*In re Smither* at 107–08.

There is no ability for the court to adjust a determination of partial dischargeability based on changes in the debtor's circumstances. If, for example, the current Mr. and Mrs. Haines were to divorce, or Mr. Haines were to retire or the Haines' semi-adult children were to leave home, there could be significant changes in Haines' ability to pay the debt owed Fitzsimonds. Were

non-dischargeable. *Greenwalt* candidly disclosed the court was multiplying disposable income times 36 months and discharging the balance. *In re Greenwalt* at 914. Although *Carlisle* does not appear to have declared any of the debt to be non-dischargeable, it is clear the court measured its test of ability to pay over a "reasonable" period of time by resorting to the chapter 13 standards. *In re Carlisle* at 821.

this court to partially discharge some of the debt owed Fitzsimonds after finding an ability to pay some but not all the debt, no further adjustment could be made in the context of this action. Most significantly, none of the partially discharged debt could ever be revived should Haines' circumstances improve.

Although well-intentioned, this court believes the courts which permit the partial discharge of divorce debts have overlooked the fact that there is already a remedy provided in the Bankruptcy Code for a debtor faced with a large non-dischargeable divorce debt—the provisions of Chapter 13. Under section 1322, such debt may be the subject of a plan calling for payments over a reasonable period of time. Should the debtor's circumstances change for the better, under section 1329(a) the former spouse creditor may request the court to increase payments on the debt. Finally, upon completion of the plan, the debtor will be discharged of any balance owed the former spouse creditor since a section 523(a)(15) obligation is not one for support. Section 1328(a)(2).

It is unnecessary for a court to invoke concepts relating to student loan hardship discharges [7] once the court has determined ability to pay and balanced the equities in favor of the former spouse creditor. The claim that the "all or nothing" approach is "harsh" is overstated as this result is no different than any other determination that a debt is nondischargeable. This court joins with the courts in the *In re Hill, In re Silvers*, 187 B.R. 648, 649 (Bankr.W.D.Mo. 1995) and *In re Florez*, 191 B.R. 112, 115 (Bankr.N.D.Ill.1995) holding that the concept of "partial discharge" does not belong in section 523(a)(15).

**D. Weighing Equities After Finding Ability To Pay:** Finding the debtor's ability to pay is only one of the factors considered in deciding whether to discharge a debt under section 523(a)(15). In weighing equities after finding an ability to pay, this court has followed the "totality of circumstances" standard adopted by *In re Hill*, 184

B.R. 750, 756 (Bankr.N.D.Ill.1995). *In re Morris* at 954, fn. 8. When weighing the totality of circumstances, one may consider the income and expenses of both parties, whether the non-debtor spouse is jointly liable on the debts, the number of dependents, the nature of the debts, the reaffirmation of any debts and the non-debtor spouse's ability to pay debts to third parties. Other courts have further refined this analysis, creating lists of factors which they believe assist in the analysis. *In re Smither* at 111; *In re Armstrong*, 205 B.R. 386, 392 (Bankr. W.D.Tenn.1996).

By any set of factors, section 523(a)(15)(B)'s balancing test tilts in favor of Fitzsimonds for a number of reasons. First, Haines' net monthly income is significantly greater than that of Fitzsimonds ($5,220.00 vs. $2,500.00/month). Second, although Haines' living expenses are significantly higher than Fitzsimonds, ($6,733.00 per Exhibit "N" vs. $1,600.00/month) a large part of the difference is the result of Fitzsimonds living rent free in her brother-in-law's house for the present. Fitzsimonds testified that were Haines ordered to pay his divorce debt, she could pay off her credit cards and other debts. She could also buy health insurance, set up a retirement plan and save money to buy a house all of which Haines already has.

Under the facts of this case the court cannot find the debtor is driven to a lower standard of living by paying this debt from net disposable income. Since the debtor has failed to show that the benefit of the discharge of this debt outweighs the detriment to Fitzsimonds which would arise if this discharge were granted, he has failed to carry his burden under section 523(a)(15)(B). The court finds the obligation non-dischargeable.

## IV. CONCLUSION

This Memorandum Decision is in lieu of findings of fact and conclusions of law. A separate judgment of non-dischargeability is filed concurrently with this decision.

---

7. The student loan hardship discharge cases permitting partial discharge of debt are likely a result of the non-dischargeability of student loan obligations after completion of a chapter 13 plan. Section 1328(a)(2).

**JUDGMENT**

The complaint of Judy Fitzsimonds for non-dischargeability of debts owed her by Clarence Haines came on for hearing on November 18, 1996. Richard R. Raverby of Raverby, Shaner & Gibson appeared as counsel for Fitzsimonds. Irene Cockcroft appeared on behalf of Haines. After consideration of the oral and documentary evidence introduced and based on the Memorandum Decision filed concurrently herewith and good cause appearing:

**IT IS HEREBY ORDERED AS FOLLOWS:**

1. Judy Fitzsimonds shall have judgment against Clarence Haines on her complaint under 11 U.S.C. section 523(a)(15) in the amount of $103,287.35, provided, however, that this sum may be partially abated in the manner provided by the Amended Findings and Orders entered in San Diego Superior Court Case No.: D280870 entered November 4, 1996.

2. The judgment shall be non-dischargeable.

3. Haines shall have judgment against Fitzsimonds on her complaint under 11 U.S.C. section 523(a)(5).

4. Fitzsimonds shall recover costs of suit.